first case is Lee et al. v. Northern Metropolitan Foundation et al. So, counsel, draw near. And so Ms. Cole, I think you've reserved two minutes for rebuttal, is that correct? That's correct, Your Honor. That gives you eight minutes out of the gate. And give me one second just so I can open to the right page. All right, you may proceed. Good morning, Your Honors, and may it please the Court. I'm Agatha Cole, an attorney at Pollack Cohen LLP, and we represent the appellants in this case who are the relators or whistleblowers in the QTAM proceedings below. This is a case about the requisite burden of proof for establishing materiality under the Federal False Claims Act and its New York State analog. In a case where an implied certification theory is brought based on unlawful discrimination and material noncompliance with anti-discrimination statutes. Adults who are unable to care for themselves, either due to developmental disability or chronic illness, are often covered by Medicaid. And Medicaid in turn contracts with adult daycare facilities to care for these individuals. The defendants in this case were one such facility called Northern Manor in Park Slope, Brooklyn. And the relators or whistleblowers in the proceedings below are former employees of Northern Manor who observed during their employment with the facility that it was consistently discriminated. Given the limitation of time, I wanted to get down to what evidence you have of that would lead us to believe that it was material on the materiality issue. I'm sorry, Your Honor, I'm having a hard time hearing you. I was saying I've wasted all this time just trying to ask you to go to materiality since you have limited time, and I think that's at least the place to start. Sure. Your Honor, materiality under the False Claims Act means the same thing as materiality in any other federal statute. So essentially, in layman's terms, it means is it important, is it relevant, or is it trivial and inconsequential? So in an implied certification case, an implied certification theory can be based on a material omission. So here it means if the facts, circumstances were fully disclosed to the government, that is, if the government had known, for example, that black, Hispanic, and Chinese registrants were being sent to a back room at the facility and not being given services, would that affect the government's decision to do business with this entity? The court, I guess it was in Universal Health, gave a three-part testimony. Your Honor, I wouldn't necessarily call it a three-part test, and I think that we address that in our briefs. I think you're referring to the Escobar case. This is a Supreme Court case where the Supreme Court gave some examples of things that would tend to establish materiality in an implied certification case specifically. So let's start with those. So of the three, do you have any of them? Absolutely. So here, and I'm reading directly from- It's not expressly designated that compliance with, it's not expressly designated in the regs, right? So whether the government expressly identified a statutory, regulatory, or contractual requirement as a condition of payment. So the condition of payment exemplar is not necessarily met here, in part because that evidence was precluded at the motions and lemonade stage. So the relators did, in fact, obtain certifications in documents from the New York Department of Health that Northern Manor had made to the State of New York, but then were precluded from introducing that evidence at the motions and lemonade stage. The other two exemplars from Escobar that you've asked me to address, Your Honors, are the government response to the noncompliance at issue in the mine run of prior cases involving similar allegations. There isn't a case that is directly on point here, but I think the totality of the case law on materiality here clearly suggests that discrimination at this scale is absolutely material to the government's decision of whether or not to contract with an entity. Well, what about, I mean, the fact that the payments continue to be made by DOH even after the allegations came to light? Should we attach any significance to that? I think just as a matter of fact, that is not an entirely accurate characterization of the record. The case here was filed in 2013. In 2014, I believe there was a separate investigation and settlement against this very same entity with the State of New York, resulting from the entities operating facilities without certified social workers on staff and operating the facility beyond the capacity of servicing more registrants than it was certified to. What is the connection between that charge and the charges? Right, so the point being that in 2014, as part of that settlement, the state stopped doing business with Northern Manor, so it's actually not accurate that the government continued to pay Northern Manor to provide services. In fact, Northern Manor has been barred from participating. But payments were made after the suit was filed, no? Well, after the suit was filed, I'm not sure, Your Honor, and I'm happy to look at the record again if there is something that gave you that impression. But my understanding is that whether the government continues to pay immediately after the filing of a suit or not doesn't go to the heart of materiality, right? Because that just means, okay, well, there are allegations now on file that something is going wrong here. And I think if nothing else, the history of the proceedings in this case, which started in 2013 and didn't go to trial until 2021, kind of gives Your Honors a sense of the ordinary course of proceedings in an FCA investigation, which is initially under seal for, in this case, what's under seal for the first year. And eventually, very early on in the case, actually, the state does stop contracting with Northern. Can I just ask you, with regard to the question of materiality, you acknowledged that there weren't cases directly on point dealing with this type of situation. It seems to me, are you arguing that there's effectively per se materiality when there are allegations of discrimination of this kind? Is that your position, or is there something specific here? Because, like I said, it seems you acknowledge there aren't cases directly on point to this. Yes. Thank you for that question, Judge Lee. And that's definitely something that I wanted to address from the decision below and the proceedings below, is this concept of per se materiality, right? And I just want to make it clear, we are not asking the court to hold that discrimination in any context or any factual scenario is per se material to the government's decision to do business with the state. One can certainly imagine a situation where, for example, Northern Manor might have hired one particularly prejudiced individual who was awful towards people of a certain race, and that would certainly be a situation that would need to be dealt with. But it's not at all the same type of situation where you have this larger scale discrimination across the provision of services at all levels, which absolutely would be material. I mean, when you're asking the materiality question, it could also be understood as, you know, would the government care that black, Hispanic, and Chinese registrants are being sent to this backroom? I don't know if it's purely would the government care, but would the government stop doing business? Would they refuse to reimburse? I mean, this is not something, you know, it's not comparable to a situation where someone's making, an institution's making claims for services that are not provided. It's, you know, it's this sort of other situation. And so I would hope that the government cares, but I don't know that that goes to the question of would it impact here. Would it be material? Yeah, and I think that a helpful analogy here, because materiality is the same under all of the federal statute, is the 10B-5 materiality analysis, which essentially asks, you know, if an investor knew of a fact that was materially omitted, would they have invested, right? And so in this context, I think- Missed the word. Would they have- Invested. Would they have purchased the securities? This is the securities 10B-5 context. Same kind of question of materiality. There we're asking about would investors invest. Here we're asking about, you know, would the government continue to do business, pay for- Would somebody continue to do business, though? I think that's the point Judge Lee was referring to. It's would they reimburse? In other words, the service was provided, right? Not provided the way they should be, and there might be other avenues to address those shortcomings, but the services themselves were provided here, correct? I mean, not really. The services were provided to white registrants. They were not provided to black, Hispanic, and Chinese registrants. But they weren't going to get reimbursed for people who weren't provided services. This is reimbursement for people who got services, right? Right, and Judge Committee had intended to address that at the damages level, right? He asked the relators to put together a damages model based on who was a white registrant of Russian descent versus who was black, Hispanic, or Chinese and said, you know, if you can prove that they were discriminated against, that's going to be your damages, right? Because they're the ones who didn't get the services. All right. We haven't really gotten at all to the evidentiary issues, but your time is up. You have a couple of minutes for rebuttal. Thank you, Your Honor. Thank you. Well, let's hear from your adversary, Mr. Green, who has ten minutes. Good morning, Your Honor, if I may. You certainly may. Thank you. I'm not sure how well my muffled voice works. Ms. Cole, I think you have to put yours back on. If it please the court, it is and was the plaintiff's burden below, the relator's burden below to prove all of the elements of a False Claims Act case based upon implied certification. And the Supreme Court succinctly tells us what those are at pages 1995 and 1996 of the Supreme Court refuter version of United Health Services versus Escobar. They basically hold that liability can attach when the defendant submits a claim for payment that makes specific representations about the goods and services but knowingly fails to disclose the defendant's noncompliance with a statutory regulatory or contractual requirement. And the court says in those circumstances, liability may attach if the omission renders those representations misleading. With respect to the issue that got discussed most below, materiality, the court further held on 1996, what matters is not the label the government attaches to a requirement but whether the defendant knowingly violated a requirement that the defendant knows is material to the government's payment decision. Materiality arises not just as an abstract in and of itself. It's a question of did the defendant know that the representation was material to the government's decision to pay. That's two parts to that thing. Is it material and did the defendant know? Literally zero evidence was presented below as to either of those elements of a False Claims Act case based upon implied certification. Zero evidence. None. None can be cited in the record. Even now, the relators cannot point to a single piece of evidence with respect to those two elements. They argue, well, you know, there's case law out there that might suggest it could be material, but there's literally no evidence that the government of the United States has ever refused to pay a claim for reimbursement for services rendered based upon allegations that in providing such services, there was discrimination. Now, I'm not going to concede here for this case that there was discrimination because, frankly, there wasn't. There were anecdotal evidence of individual employees doing some things that might not have been appropriate. There also was no defense put on as to what the regulations are, what the requirements are, what you have to do when you have a multilingual population and all sorts of things that just never got addressed. This whole back room thing as though that's some strange place. You have to have Spanish-speaking or Spanish-language materials. You have to have Russian-language materials, and you pretty much have to separate them and put them in different places. Otherwise, it's completely ineffective as an adult daycare center. But putting that aside, let's assume there was discrimination. Let's assume there was intentional discrimination, a complete absence of evidence again. There's no evidence whatsoever that the government of the United States in paying claims for adult daycare centers, when they were essentially medical services, would not pay. And, Your Honor, you asked, well, the government certainly would care, and of course the government would care. And there were specific regulations as to what the government's supposed to do when allegations of this sort are made. Those regulations were promulgated back in 1965, I think, by the Department of Justice after passage of the Civil Rights Act. It might actually have been a couple of years later, because it followed a Supreme Court case that made it difficult to prove discrimination in services. So the Department of Justice adopted a little bit more strict guidelines than the Supreme Court case. I take it those were not invoked here. They were not invoked. No, the government did not invoke these regulations. There is a procedure. There's a conciliation procedure. There's a consent order procedure. And basically the regs say, explicitly say, before you stop doing business, before you stop doing business, you must do A, B, C, D, E, and F. All of which are geared toward obtaining compliance as opposed to shutting down a medical facility. Okay? Or other facility providing services to the public. That was the Department of Justice's thinking at the time. They adopted those regulations. Those same regulations were adopted by the Department of Human Services, I think it was at the time. I think it's now the Health and Human Services. So there's a set of regulations that apply here. None of this gets mentioned below. Okay? Appellants, respondents essentially ignored every essential part of their case except for putting on the plaintiffs themselves, nobody else, to testify about anecdotal instances where people were treated differently. It's not a case. They put no case on it, literally on any of the elements of the False Claims Act, and completely ignored materiality despite Judge Cometty imploring them to give him evidence. We had multiple conferences before this case started trial, weeks in advance, with Judge Cometty asking the respondent, I mean the, or later, how are you proving materiality? I don't see it. Over and over again. And no evidence ever came in on the subject. Now I want to point out, with respect to the motion in limiting, the particular document that appellants refer to in their brief, which was pre-marked Exhibit 51. It's not in the evidence. It's not even in the appendix. It's kind of hard to say, well, that document there says X, Y, and Z, when they haven't even included it in the appendix. You say more about 51 than they do. That's correct. And I will say I read it again the other day. It doesn't say anything. There's no name on it. Literally no name, no date, nothing. Nothing that identifies it with any of these defendants. And that's another point I'd just like to bring up. I represent three different defendants at this stage. At one point there was a fourth. Northern Metropolitan Foundation of Healthcare, Inc., Northern Manor MultiCare Center, Northern Manor Adult Care Center Healthcare Program. You will note that appellants refer to them as Northern. Never differentiate among them. Three different defendants. Which one of those defendants submitted a claim? Which one of those defendants made a representation? Which one of those defendants ran the program they're talking about? There's literally no evidence that any one of those three entities took an act with respect to submitting a claim, made a representation with respect to submitting a claim, knew anything about any discrimination, or knew anything about materiality. In Strzok, the Second Circuit interpreted the Supreme Court's Escobar decision. They set forth their interpretation of the multi-part test in terms of materiality. And related appellants haven't met any of those standards. But one thing I want to point out, the Strzok court also differentiated between the defendants. The Strzok court says, basically, they examined, is there evidence that, I'm trying to find it, I'm sorry. Okay, with respect to knowledge, the opinion with respect to knowledge starts on page 66 of that decision. They differentiate between Lee Strzok, one defendant, one named defendant, and between Cynthia Golden, a different named defendant. And they examine, now this is at the complaint stage, but they examine whether the complaint alleges sufficient knowledge on behalf of each one of those defendants separately. It's not some aggregate, they're all in it together. And Second Circuit in Strzok decided there was enough evidence as to Mr. Strzok in the complaint for it to go forward. There was not enough evidence as to Ms. Golden to go forward. Here, there is no differentiation whatsoever. There's never been. This is a case where the relators threw a bunch of facts against the wall with respect to discrimination and ignored every other element of proving the case. At trial. Literally. Every other element. That's where we stand. All right, but with respect to materiality, are you suggesting that Judge Comedy sort of did a defendant-by-defendant analysis and found them each short, or he just decided that even assuming this applied to all defendants, this wasn't enough? Yeah, I think Judge Comedy examined materiality in and of itself and determined there was an absence of evidence of materiality. Absolutely. I'm suggesting from my standpoint in terms of justifying the judgment and the ultimate dismissal of the case. Well, you're asking us to affirm him. Oh, absolutely. Are you asking us to do something he didn't do? Not at all. No, I'm arguing an additional or one of the many arguments in favor of affirmance of Judge Comedy's decision. It would be interesting for the next time we have this sort of argument if we could agree on how to pronounce the name of the district judge. Yes. I'm sorry. I'm not absolutely certain. I think it's Comedy, but it could be Committee. I think it's Committee at a hearing. Okay. Then I'm guilty of mispronouncing it despite the fact I spent probably a couple of weeks in front of him. Well, anyway, we won't hold that against anyone. Okay. Mr. Green, I think your light's on, so unless the other panelists have any questions, we'll hear from Ms. Cole for two minutes. Thank you. Thank you. Mr. Green, if you could just put on the mask. Those are the running rules for the court. It may not be for much longer. Who knows? But for now, we want to be scrupulous. Thanks. Thank you, Your Honors. I just want to very briefly address the procedural history and evidentiary rulings that I didn't address in my main argument. The case was originally assigned to Judge Brody, and the materiality issue was first discussed at the summary judgment stage where Judge Brody stated unequivocally that the discriminatory conduct alleged by relators, if true, would be considered a material violation as a matter of law, and that can be found at Appendix 808 through 813. It's a bench ruling, and I just want to read to you two very short portions of that. Was the district court thereafter bound by that? Was Judge Committee bound by Judge Brody's summary judgment ruling? Arguably, yes, it was law of the case, absolutely. But bound or not bound, the problem here is the kind of reversing of course as to the Judge Committee saying and Judge Brody saying, you don't need to present a witness on materiality. That's a legal issue. We don't need an expert witness to testify about the law, and that's literally something that Judge Committee said at page ID 3268 after he took over the case. Counsel indicated its intent to present a witness from the New York Department of Health to testify about materiality in case it becomes an issue and was repeatedly told that that was not necessary. The judges were extremely skeptical about the need for a witness on that topic. He said, quote, you're in as good a position to know the law, probably better actually at page ID 3284 through 85. Again, I'm not sure I understand why you need somebody from the state. Nevertheless, Relators Council subpoenaed the state and continued to say that they intended to present a witness at trial or have one ready at trial to testify about materiality, to have a government witness come in and say, of course this is material to our contracting obligation, to our decision to pay or contract with this entity. And because of COVID, the subpoena was issued and they negotiated with the New York State Department of Health to receive documents, rather, and documentary evidence of the certifications in lieu of a live witness from the Department of Health. Now, keep in mind, these were certifications that should have been produced, in the first instance, by defendants in discovery and were not. So it was already quite shocking to receive these certifications that they had not come across before. And then, at the motions and limine stage, Judge's committee precludes those documents and says, I'm going to treat this as a motion to reopen discovery, which I will not do at this late stage. Pretty wild ruling, but fine. What do you mean it's a wild ruling? I'm not sure I'm understanding. I mean, discovery had been over for years at that point, right? No one was asking to reopen discovery, Your Honor. But it's all new material that hadn't been disclosed or shared during discovery, right? A subpoena was issued on the New York State Department of Health because- No, no, we were trying to get in now and make use of thousands of new documents that had not been disclosed during discovery, correct? He had written certifications in lieu of a live witness to satisfy the materiality requirement, despite the fact that Judge's committee at this point has said you don't need a witness to testify about materiality because that's a legal issue. So then he precludes the documents, which is unusual but wouldn't be a big deal if he held by his prior representation to the litigants that he didn't need a witness from the state on that issue. If, in fact, he was prepared to rule on materiality as a matter of law based on the evidence of just the wide-scale discrimination, then we wouldn't have needed the documents with the express certifications because the implied certification theory, as a matter of law, would have been sufficient. And then, before the leaders have even finished putting on their case, the judge adjourns. Defendants move for judgment on partial findings under Rule 52, and the judge grants that motion, finding that the relators had not presented legally sufficient evidence on the materiality element at trial. So what we have here is a case that's filed in 2013. There are several evidentiary rulings between 2015 or 2016 and leading up to the trial, where a relator's counsel is told, you don't need a government witness on materiality. You don't need an expert witness to testify about the law. And then, oh, well, you didn't meet your burden of proof on that, even though the judge found that, as a matter of fact, there was wide-scale discrimination. The services were defective. Services were not rendered to black, Hispanic, and Chinese people. And counsel for the appellees can agree or disagree and say that they want to concede or not concede discrimination, but the fact is that, on the record, they more or less did concede, but that doesn't matter. The bottom line is that judge committee, in his findings of fact, said, I find that there was discrimination, that minority registrants were sent to this back room, that they were not provided services. And the only question before this court is whether that is a material violation in the sense that it would affect the government's decision to contract with this entity in the first place, to continue contracting with the entity, to continue paying for the services that were not really rendered. Well, that's what materiality is, right? Exactly. Whether these things would have affected the decision to reimburse for these services. That's right. And I think another really helpful hypothetical here is, you know, imagine that this was a children's daycare, for example, that is paid for by the government in one way or another. And imagine that this children's daycare, you know, gives excellent service to all the white kids in this care, but it sends all the black and brown children to a back room, doesn't allow them to go on field trips to museums, to gardens, parks. Would the government ascend to that? Would it continue contracting with that entity? Would it pay that entity for those kinds of services? No. Well, I think that's the question before the court, Your Honor. Well, I think the question before the court is whether the judge committee erred in concluding that you had an established materiality, which is an element that has to be proven, right? It is an element that has to be proven, but there is no requirement that the relators. You don't think materiality has to be proven? Of course it has to be proven, but they proved it by showing that the discrimination was so rampant and wide scale that the services rendered were defective. And an implied certification case that is based on a material omission, the question is if these facts had been disclosed, if, you know, That's the question. I guess the issue is under ESCOBAR, what is the state of the record to support a conclusion that it would be material? But anyway, I think we understand what the question is. So you've gone over. We have a couple of other arguments, but we will reserve decision. Thank you very much. Thank you both. Well argued. Thank you, Your Honor. Thank you. Thank you, Your Honor. Our next case is United States v. Carr. Thank you. All right. Mr. Unger, you've got ten minutes, but you reserved three for rebuttal. So that gives you seven minutes to start. Thank you. Thank you. And may it please the court, I'm Randall Unger. I represent Frank Carr, the appellant in this case. First point, the appellant did not waive his rights under 21 U.S.C. 851. Section 851 contains specific notice requirements to an accused regarding the right to challenge the accuracy Look, there's no question about that, it seems to me, anyway. He was not asked whether or not he acknowledged or was going to challenge 851. The district court didn't ask that question. I guess the issue is that's not dispositive, right? I mean, our case law makes it clear that where there's no prejudice, that that kind of error is not going to be a basis for reversal. Am I wrong about that? No. The court is correct. So why would it have made a difference? Because here there's a clear acknowledgment in the plea agreement and during the plea allocation of the prior conviction. And in any event, the conviction was too old to be challenged under 851 anyway, wasn't it? I think it might have exceeded the statute of limitations, but that's a question that was never litigated in the district court. That was raised by the government for the first time on this appeal. Well, but that's the issue on appeal is whether or not- I understand.